# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OMM IMPORTS, INC. a Florida corporation, d/b/a ZERO GRAVITY, <br><br>　　　Plaintiff, <br><br>v. <br><br>YRS GROUP, INC., a Nevada corporation, d/b/a OPATRA USA, <br><br>　　　Defendant. | **CIVIL CASE NO.:** <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR WILLFUL PATENT INFRINGEMENT

Plaintiff, OMM IMPORTS, INC., a Florida corporation, d/b/a ZERO GRAVITY, files this Complaint for Willful Patent Infringement against YRS GROUP, INC., a Nevada corporation, d/b/a/ OPATRA USA, and states:

### JURISDICTION, VENUE AND THE PARTIES

1.　This is an action brought pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et. seq*.

2.　This Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, as this case involves a federal question arising under the Constitution, laws or treaties of the United States.

3.　At all times material hereto, OMM IMPORTS, INC., a Florida corporation, d/b/a ZERO GRAVITY (hereinafter "OMM"), had and has its principle address located in Miami-Dade County, Florida.

4.　Based on information and belief, at all times material hereto, YRS GROUP, INC., a Nevada corporation, d/b/a/ OPATRA USA ("OPATRA"), has and had its principal address

located in Nevada, but has conducted business via interstate channels in this judicial district, and is otherwise *sui juris*.

5. This action arises as a result of the infringing conduct of OPATRA, which implicates interstate commerce.

6. Venue is proper in the Southern District of Florida pursuant to Title 28, United States Code, Section 1391(c) and/or 1400(b) because a substantial part of the events giving rise to the infringement claims at issue occurred within this judicial district, and OPATRA's parent company, Opatra, Ltd. is a foreign entity based in the United Kingdom.

7. All conditions precedent have been met, waived, or satisfied to bring this lawsuit.

## GENERAL ALLEGATIONS

8. OMM was formed as a Florida corporation in 2014, and since then has been focused, *inter alia*, on designing and developing the safest, most effective, and most uniquely designed anti-aging facial products to deliver to consumers across the globe.

9. One such product designed and developed by OMM and marketed to consumers is known as the Perfectio®, which is an FDA-cleared Class II medical device designed by OMM offering consumers the ability to perform easy, pain free, high-end facial skin rejuvenation in the comfort and privacy of their own homes. OMM offers the Perfectio® as well as the Perfectio® Plus (collectively, the "Perfectio® line"). Both devices are identical from a design perspective, but the Plus is a more powerful device.

10. The Perfectio® line promotes skin health through the use of light-emitting diodes (LED), which emit light at red and infrared wavelengths.

11. At one time, red LED facial treatment was exclusively offered through doctor's offices and high-end spas, but OMM, though its Perfectio® line, became an industry leader by

designing and bringing to market red light skin rejuvenation therapy for consumer home use.

12. Consumers who purchase a product from the Perfectio® line receive a Perfectio® device, its charging base, electrical cord, user manual, warranty, and travel kit, all packaged and delivered to their homes as follows:



*See* [Exhibit "B", larger copies of all images attached throughout this Complaint].

13. On March 3, 2016, as a result of the sleek unique design aspects of the Perfectio® line, OMM filed U.S. Design Patent Application No. 29/556,810 with the United States Patent and Trademark Office (USPTO).

14. Thereafter, on July 11, 2017, the USPTO granted the foregoing application, and issued U.S. Patent No. D791,960 ("the '960 Patent") to OMM.

15. Some of the designs set forth in the '960 Patent include the following perspectives, each depicting various aspects of the Perfectio® line:



*See* [Exhibit "A", a copy of the '960 Patent].

16.     As is apparent from the foregoing images, FIG. 1 of the '960 Patent depicts a front-elevation view of the patented design; FIG 2, FIG 3 and FIG 4 depict rear-elevation, right-side and left-side views, respectively, of the same uniquely designed device.

17.     The '960 Patented design, as embodied in the Perfectio® line, has garnered overwhelming support and enthusiasm from consumers.

18.     Unfortunately, as a direct result of such wide success, OMM has recently discovered several entities promoting competing devices that infringe the claims of the '960 Patent.

19.     One such infringer is Defendant, OPATRA, which was originally formed as a company based in the United Kingdom.  Presumably based on the heavy consumer demand for the product, OPATRA recently expanded its operations into the United States, and presently markets throughout the country over the internet through, at least, http://www.us.opatra.com.

20.     One product line marketed by OPATRA via its us.opatra.com web domain presence is referred to as SYNERGY, which is promoted as "a Therapeutic device that combines

LED light and heat therapy." *See* [Exhibit "C", a screenshot image from OPATRA's website].

21. OPATRA sells a SYNERGY device, which corresponds to OMM's Perfectio®, as well as a recently launched SYNERGY Limited Edition device, which corresponds to OMM's Perfectio® Plus. (Collectively, the SYNERGY devices are referred to as the "SYNERGY line")

22. OPATRA markets its competing SYNERGY line to target the exact same consumers as OMM does through its Perfectio® line.

23. In fact, not only has OPATRA copied OMM's unique patented design, but it has also copied, almost word-for-word, OMM's marketing video, as well as OMM's packaging of the Perfectio® line. *See* images below:






*See also* Composite Exhibit "B".

24. In another effort to trade off of OMM's Perfectio® devices, OPATRA falsely marks its products as having been cleared by the FDA as a medical device, when, based on information and belief, OPATRA has not obtained such clearance. *See* image below:



(Emphasis added). *See also* Composite Exhibit "B".

25. Additionally, and most importantly, OPATRA styled its device to look virtually identical stylistically to the Perfectio® line and, more critically, to the claims of the '960 Patent. For example, the following are some additional images of the infringing SYNERGY device:



*See also* Composite Exhibit "B".

26. In an effort to avoid this instant litigation, OMM contacted OPATRA to demand an immediate cessation of all infringing activity. Such efforts were to no avail, as OPATRA continues to engage in its unlawful conduct.

27. As such, OMM has been required to retain the undersigned counsel to pursue its interests in this matter, and is obligated to pay the undersigned a reasonable attorneys' fee for their services, and to reimburse the undersigned for any costs incurred in connection with said representation.

## COUNT I:
## TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

28. Plaintiff re-alleges and re-avers paragraphs one (1) through twenty-seven (27) as if fully set forth herein.

29. This is an action, in part, for temporary and permanent injunctive relief pursuant to Title 35, United States Code, Section 283, of the United States Patent Act. Said section provides that this Court may "grant injunctions in accordance with the principles of equity to prevent the violations of any right secured by patent, on such terms as the court deems reasonable."

30. As alluded to in more detail above, OPATRA has infringed, and continues to infringe, on the claims of the '960 Patent by, *at least*, making, using, selling and/or offering for sale the SYNERGY line devices.

31. This action also seeks temporary and permanent injunctive relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for OPATRA's trade dress infringement and unfair competition.

32. As alluded to in more detail above, OPATRA has engaged in trade dress infringement and unfair competition by, *inter alia*, copying OMM's distinctive packaging that OMM uses to sell its Perfectio® line.

33. Such refusal to honor OMM's exclusive patent rights, and intentional copying of OMM's distinctive packaging, has caused, and will continue to cause, irreparable harm. Each day that OMM is deprived of its earned intellectual property rights causes irreparable injury.

34. OMM has no adequate remedy at law, especially because the property at issue is intellectual property.

35. There is no remedy at law that can fully compensate OMM for the deprivation of said intellectual property rights, and, in light of the facts of this case, there is a substantial likelihood that OMM will succeed on the merits of the instant case.

**WHEREFORE**, OMM respectfully requests that the Court enter a temporary and permanent injunction enjoining OPATRA, and all those in active concert and participation with it, from using, making, selling, marketing, distributing, transferring, or otherwise infringing on the claims of the '960 Patent and of OMM's trade dress as more fully set forth above, together with costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II:
## WILLFUL PATENT INFRINGEMENT

36. Plaintiff re-alleges and re-avers paragraphs one (1) through twenty-seven (27) as if fully set forth herein.

37. This is an action for patent infringement pursuant to Title 35, United States Code, Section 271, of the United States Patent Act.

38. As more fully set forth above, OPATRA has infringed, and continues to infringe, the claims of the '960 Patent by, *at least*, making, using, offering for sale, and/or selling the infringing devices marketed and sold under the SYNERGY line.

39. All such infringing conduct of OPATRA has occurred and was committed by OPATRA in a willful, knowing, bad-faith, and brazen manner, evidenced not only by the clear copying of OMM's Perfectio® line, but also of the bold wholesale copying of OMM's marketing video and product packaging.

40. OPATRA's actions have caused, and continue to cause, irreparable harm to OMM to which there is no adequate remedy at law.

**WHEREFORE**, OMM respectfully demands judgment against OPATRA for the full amount of damages sustained, including, but not limited to, any and all remedies available pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et. seq.,* which include, but are not limited to, a reasonable royalty award, disgorgement of the profits received by OPATRA, treble damages, costs, pre and post judgment interest at the maximum allowable rate, attorneys' fees, and such other and further relief this Court deems just and proper.

## COUNT III:
## TRADE DRESS INFRINGEMENT/UNFAIR COMPETITION

41. Plaintiff re-alleges and re-avers paragraphs one (1) through twenty-seven (27) as if fully set forth herein.

42. This is an action for trade dress infringement and unfair competition pursuant to 15 U.S.C. § 1125(a).

43. OMM packages its Perfectio® devices in a distinctive, non-functional manner. Specifically, OMM sells its Perfectio® devices (**i**) in a rectangular box approximately 10'' x 4.5'' x 4.5''; (**ii**) made from a shiny moire like fabric; (**iii**) which contains a diagonal opening on the side, and a flat opening in the front, opening backwards; (**iv**) and which contains a felt interior, (**v**) and in which the device is located in the bottom-center of the box, facing upwards, with the LED face of the device facing outwards.

44. As a result of this unique packaging, consumers associate the distinctive packaging with OMM.

45. Notwithstanding OMM's valid and enforceable rights in and to the Perfectio® trade dress, OPATRA uses *identical* packaging for its SYNERGY line, even including almost identical verbiage on the back of its box regarding the description of the product and the

"warnings" regarding use of the product.

46. The SYNERGY device is packaged in an identical gold moire like fabric used by OMM in connection with its Perfectio® Plus device packaging, while the SYNERGY Limited Edition is packaged in a silver moire like fabric, such as that used by OMM in connection with its Perfectio® device, which OPATRA refers to as "rose gold." Images comparing the packaging of the competing products are shown below:

    

*See also* Composite Exhibit "B".

47. Moreover, OMM markets its Perfectio® devices, *in part*, with an approximately four-minute long instructional video.

48. OPATRA has copied this video in substantial part, using almost the exact same verbiage and graphics as appears in the Perfectio® video.

49. By using OMM's trade dress without permission, OPATRA is unfairly benefiting from OMM's investment in the Perfectio® trade dress and the reputation, success, and goodwill OMM has cultivated through its marketing, promotion, and sales of its Perfectio® devices.

50. OPATRA's unauthorized use of OMM's trade dress in connection with advertising and offering its SYNERGY line for sale is likely to cause consumer confusion and mistake, and to deceive consumers as to the source, origin, or affiliation of OPATRA's products.

51. OPATRA's actions constitute trade dress infringement, unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. Upon information and belief, OPATRA knew of OMM's trade dress when it designed its SYNERGY line. Accordingly, OPATRA's infringement has been and continues to be intentional and willful.

**WHEREFORE**, OMM respectfully demands judgment against OPATRA for the full amount of damages sustained, including, but not limited to, any and all remedies available pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a,) which include, but are not limited to, a reasonable royalty award, disgorgement of the profits received by OPATRA, treble damages, costs, pre and post judgment interest at the maximum allowable rate, attorneys' fees, and such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

OMM demands trial by jury of all issues so triable as a matter of law.

**Dated this 30th day of April, 2018.**

        Respectfully Submitted,

        /s/ Alexander D. Brown/
        ALEXANDER D. BROWN, ESQ.
        FLA. BAR NO. 752665
        abrown@conceptlaw.com
        ADAM S. GOLDMAN, ESQ.
        FLA. BAR. NO. 86761
        agoldman@conceptlaw.com

        THE CONCEPT LAW GROUP, P.A.
        6400 N. Andrews Ave., Suite 500
        Fort Lauderdale, Florida 33309
        T: 754.300.1500
        F: 754.300.1501

        *Counsel for Plaintiff*